UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CHARLENE PLATT,                                  :

           Plaintiff,                       :       OPINION & ORDER

         -v.-                                   :
                                                                         20 Civ. 8382 (GWG)
COMMISSIONER OF SOCIAL SECURITY,                 :

                                                 :
           Defendant.
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Charlene Platt brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons set forth below, Platt's motion is denied, and the Commissioner's cross-motion is granted.

I. BACKGROUND

    A. Procedural History

On April 7, 2017, Platt filed an application for disability insurance benefits and Supplemental Security Income, alleging a disability that began on February 1, 2016. SSA

---

[1] Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 13, 2021 (Docket # 23); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 13, 2021 (Docket # 24) ("Pl. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings, filed Nov. 19, 2021 (Docket # 25); Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings, filed Nov. 19, 2021 (Docket # 26) ("Def. Mem."); Plaintiff's Reply Memorandum of Law, filed Dec. 9, 2021 (Docket # 27) ("Pl. Reply"); Defendant's Reply Memorandum of Law, filed Dec. 22, 2021 (Docket # 28).

Administrative Record, filed May 21, 2021 (Docket # 17), at 185, 194 ("R."). Platt's applications were denied on July 7, 2017, see R. 102-03, 106, after which Platt requested a hearing before an administrative law judge ("ALJ"), see R. 119. A video hearing was held on June 17, 2019. See R. 59-81. In a written decision dated July 5, 2019, the ALJ found that Platt was not disabled and denied Platt's claims. See R. 13-24. Platt requested a review by the Appeals Council, which was denied on August 7, 2020. See R. 1-3. On October 7, 2020, Platt filed this action seeking review of the ALJ's decision. See Complaint, filed Oct. 7, 2020 (Docket # 1).

B. The Hearing Before the ALJ

The hearing was held in Jersey City, New Jersey. See R. 61. Platt and her representative appeared remotely from the Bronx, New York. See id. Vocational Expert ("VE") Dawn Blythe also testified at the hearing. See R. 61, 76-80.

Platt testified that she was not working at the time of the hearing, and had not worked since February 1, 2016 due to leg and back pain. See R. 66-67. Platt lives in a second-floor apartment in the Bronx, New York with her two adult sons. R. 61, 67. Platt attended school through the eleventh grade. R. 75. Before February 2016, Platt had worked as a home health aide. See R. 76, 78.

Platt testified that she had difficulty doing household tasks, and often relied on her two sons to complete tasks such as doing laundry and washing dishes. See R. 68-71. Platt spends her days reading and watching television. See R. 71, 76. Platt stated that she used a cane whenever she left her home, and that she was only able to walk for about a block without needing to sit and rest. R. 69. Platt stated that she would typically take a taxi for transportation, although she did not regularly leave her home. See R. 72.

Platt reported that she experienced aches and pains associated with her lupus, which intensified on days when it rained. R. 73-74. Platt stated that she generally could not remain seated for longer than one hour without feeling stiff and needing to move. R. 71-72.

Following Platt's testimony, the ALJ questioned the VE. See R. 76, 78. Specifically, the ALJ inquired about the employability of an individual with Platt's age, education, and background who was limited to light work in that she could frequently climb stairs or ramps; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, or crawl; perform simple routine work; have occasional and superficial interaction with the public and co-workers; and have occasional interaction with supervisors. R. 78. The VE testified that such a person could not perform Platt's past relevant work but could perform the occupations of housekeeping cleaner, cafeteria attendant, and photocopy machine operator. See R. 79. The VE also testified that none of these occupations would be sustainable for an individual who was absent more than once per month. Id.

    C. The Medical Evidence

Both Platt and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 2-5; Def. Mem. at 3-13. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed May 24, 2021 (Docket # 18) ¶ 5, and neither party has done so. Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D.  The ALJ's Decision

The ALJ denied Platt's application on July 5, 2019.  See R. 24.  In doing so, the ALJ concluded that Platt had not been under a disability within the meaning of the Social Security Act from February 1, 2016 through the date of the ALJ's decision.  R. 23-24.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found that Platt met the insured status requirements through December 31, 2020, and "has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date."  R. 15.  At step two, the ALJ found that Platt "has the following severe impairments: sciatica, osteopenia, lupus, major depressive disorder, and bipolar disorder."  Id.  The ALJ explained her finding that claimant's hypertension was non-severe "because it has no effect on the claimant's ability to perform basic work activities" and "was diet controlled."  R. 16.

At step three, the ALJ found that Platt "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period.  Id.  The ALJ specifically considering listings 1.04 ("Disorders of the spine"), 12.04 ("Depressive, bipolar and related disorders"), and 14.02 ("Systemic lupus erythematosus").  See R. 16-18; see also 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Platt did not meet listing 1.04 because "the record d[id] not show any motor loss, muscle atrophy or weakness, sensory or reflex loss, or a positive straight leg-raising test."  R. 16.  The ALJ found that Platt's symptoms did not meet or equal listing 14.02, as the record did not show "involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate level of severity."  Id.  Finally, the ALJ applied the "paragraph B" criteria to conclude that Platt's symptoms did not meet or equal listing 12.04.  See R. 16-18.  These require that "the mental impairment must

result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." See R. 16.  The ALJ found that Platt had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself.  See R. 17.

Before moving to step four, the ALJ assessed Platt's residual functional capacity ("RFC") for the relevant period.  See R. 18-22.  The ALJ determined that, although Platt's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," R. 19, Platt's testimony "concerning the intensity, persistence, and limiting effects of her symptoms [was] not consistent with the record as a whole," R. 21.  The ALJ concluded that Platt had the RFC to:

> perform light work as defined in 20 [C.F.R.] 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps or stairs.  She can never climb ladders, ropes, or scaffolds.  The claimant can frequently stoop, kneel, crouch, or crawl.  The claimant can perform simple routine work.  She can occasionally and superficial[ly] interact with the general public and coworkers.  She can occasionally interact with supervisors.

R. 18.  The ALJ reasoned that Platt's physical impairments did not "significantly diminish her ability to perform basic work activities," as her "pain was controlled with medication and . . . she retained some ability in ambulating, manipulative functioning, and performance of postural activities." R. 19.  The ALJ concluded that Platt's depression and bipolar disorder did not preclude her from performing simple routine work, as evidenced by her "mostly normal psychiatric findings" and her activities of daily living.  See R. 19-20.  Although the ALJ did not name the physicians whose opinions and treatment notes informed the RFC, the citations to the

record reflect that she considered the opinions and treatment notes of Dr. Slezinger, Dr. Archbald, Dr. Franchin, Dr. Calderon, and consultative psychiatric examiner Dr. Miller.

At step four, the ALJ concluded that Platt was "unable to perform any past relevant work," during the relevant time period. R. 22. Finally, at step five, considering Platt's "age, education, work experience, and residual functional capacity" for light work, and relying on the hearing testimony of the VE, the ALJ found that Platt was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 23. Accordingly, the ALJ determined that Platt was not disabled. R. 27.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quotation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (quotation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (quotation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (quotation omitted).

    B.  <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (citations omitted) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must

review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Platt raises two arguments in her challenge to the ALJ's decision: (1) that constitutional defects in the structure of the SSA deprived her of a valid adjudicatory process, see Pl. Mem. at 14-15; and (2) that the ALJ's RFC determination was infirm because the ALJ improperly evaluated the opinion of Dr. Miller, see Pl. Mem. at 7-13. We address each argument next.

A. Separation of Powers and the SSA Commissioner

The SSA is headed by a single Commissioner "appointed by the President, by and with the advice and consent of the Senate." 42 U.S.C. § 902(a)(1). The SSA Commissioner's appointment is for a term of six years, and he or she "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." Id. § 902(a)(3). In Seila Law LLC v. Consumer Financial Protection Bureau, 140 S. Ct. 2183 (2020), the Supreme Court held that a statute that insulates an agency's head from removal except for cause was incompatible with the Constitution's command that "'[t]he executive Power shall be vested in a

President,' who must 'take Care that the Laws be faithfully executed.'" Id. at 2197 (quoting U.S. Const. art. II, § 1, cls. 1, 3).

The parties agree that separation-of-powers considerations raised as to the CFPB in Seila Law apply equally to the highly similar structure of the SSA, and that 42 U.S.C. § 902(a)(3)'s restriction on the President's authority to remove the SSA Commissioner is unconstitutional. See Pl. Mem. at 14; Def. Mem. at 14. However, the parties disagree as to whether this legal conclusion compels remand in this case. Platt argues that she is entitled to a de novo hearing by a different ALJ solely because of "unconstitutional taint" associated with (1) the ALJ's appointment under a Commissioner who was not removable except for cause, and (2) that ALJ's application of regulations adopted by a Commissioner who was not removable except for cause. See Pl. Mem. at 14. Defendant argues that the ALJ's appointment was ratified by an Acting Commissioner who was removable at will notwithstanding 42 U.S.C. § 902(a)(3), and that there was therefore no constitutional defect in the ALJ's ability to hear Platt's case. See Def. Mem. at 14-15. Defendant also argues that Platt cannot show that the unconstitutional removal restriction itself was the cause of her unfavorable disability determination, either through the selection of her ALJ or the promulgation of regulations. Id. at 15-16. This argument relies on Collins v. Yellen, 141 S. Ct. 1761 (2021), in which the Supreme Court held that, to obtain relief from agency action attributable to an unconstitutional removal restriction, an individual must show that the removal restriction itself "inflict[ed] compensable harm." Id. at 1789.[2]

---

[2] The challenge here is not directly related to the issue that was raised in Lucia v. SEC, 138 S. Ct. 2044 (2018). Lucia dealt with the effect of the appointment of inferior officers that was invalid under the Appointments Clause, id. at 2050, a defect that the Supreme Court later suggested was equally applicable to the SSA, see Carr v. Saul, 141 S. Ct. 1352, 1357 (2021). Here, there is no challenge to the appointment of the head of the SSA, only to the provision relating to removal. As Collins itself pointed out, Lucia involved "a Government actor's exercise of power that the actor did not lawfully possess." 141 S. Ct. at 1788. Here, by contrast,

It is not necessary to reach the Commissioner's first argument because Platt has not made the showing of harm required by Collins. Platt's main brief made no reference to Collins or to any harm attributable to the unconstitutional removal restriction and plaintiff did not respond to any of the arguments made by the Commissioner in her opposition brief. Platt suggests that the ALJ lacked "lawful authority" to adjudicate her claim and that the agency's regulations suffer from an "unconstitutional taint." Pl. Mem. at 15. However, Collins makes clear that the actions of a "properly appointed" officer are valid, even when there is an unconstitutional removal restriction, so long as they do not otherwise exceed legal authority. 141 S. Ct. at 1787.

Because Platt has failed to explain how the removal restriction in 42 U.S.C. § 902(a)(3) could have impacted the ALJ's decision to reject her appeal, we conclude that her separation of powers argument is without merit. We note that this same conclusion has been reached in numerous cases across the country addressing similar challenges to ALJ decisions in social security cases. See, e.g., Alec F. v. Comm'r of Soc. Sec. Admin., 2022 WL 278307, at *5 (S.D. Ohio Jan. 31, 2022); Thomas v. Comm'r of Soc. Sec., 2022 WL 268844, at *2 (W.D. Wash. Jan. 28, 2022); Patterson v. Kijakazi, 2022 WL 178683, at *7 (M.D. Pa. Jan. 18, 2022); Benavidez v. Kijakazi, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021); Boger v. Kijakazi, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021).

B. RFC Determination and Dr. Miller's Opinion

In evaluating a medical opinion, an ALJ must apply the factors set forth in 20 C.F.R. § 404.1520c(c): supportability, consistency, the nature of the relationship between the medical source and the claimant, how specialized the medical source is, and other factors, such as

---

there is no basis for concluding that the head of the SSA "lacked the authority to carry out the functions of the office" merely because the statute under which she was appointed contains an unconstitutional removal provision. Id.

"evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Among these five factors, the "most important" are "supportability" and "consistency." Id. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the rules provide that a medical opinion's persuasiveness is increased to the extent the medical source provides relevant "objective medical evidence and supporting explanations." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, the rules provide that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(3). Thus, "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." See Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021).

Platt's only substantive objection to the ALJ's decision is that the ALJ failed to appropriately evaluate the opinion of psychiatric consultative examiner Dr. Miller when determining Platt's RFC. See Pl. Mem. at 7-9. Platt characterizes the ALJ's bases for rejecting Dr. Miller's opinion as being speculative, id. at 9, illogical, id. at 10, 13, and unsupported by the record, id. at 12-13. We disagree.

First, we note that the ALJ accepted many of Dr. Miller's assessments. Dr. Miller found that Platt was moderately limited at interacting with others, R. 352; so did the ALJ, R. 17. Dr. Miller found that Platt was moderately limited at regulating emotions, controlling behavior, and maintaining well being, R. 352, while the ALJ found that Platt was moderately limited in

"adapting or managing oneself," R. 17, which appears to be the closest analog of these limitations among the four broad areas of mental functioning.  The most salient difference of opinion was that Dr. Miller concluded that Platt had a marked limitation in her ability to "sustain an ordinary routine and regular attendance at work," R. 352, while the ALJ expressly rejected this conclusion, R. 22.  In the portion of the RFC relevant to Platt's psychiatric limitations, the ALJ found that she could "perform simple routine work," "can occasionally and superficial[ly] interact with the general public and coworkers," and "can occasionally interact with supervisors."  R. 18.

As to the ALJ's finding in this domain, we conclude that the ALJ fulfilled the obligation set forth in SSA regulations that Dr. Miller's opinion be evaluated in terms of the factors identified in 20 C.F.R. § 404.1520c(c).  The ALJ reasoned that Dr. Miller's opinion was "inconsistent with the claimant's function report . . . and the claimant's own statements to the examiner," R. 21, and articulated these inconsistencies.  The ALJ also highlighted potential internal inconsistencies in Dr. Miller's opinion, noting that Dr. Miller had found Platt to be capable of performing complex work while also noting that she had an impaired memory.  See R. 21-22.  The ALJ also considered whether Dr. Miller had presented objective medical evidence in the record to support his conclusions, explaining that "there is no explanation offered" to support Dr. Miller's opinion that Platt had marked limits in maintaining a schedule.  R. 22.  Accordingly, the ALJ complied with SSA regulations by evaluating the supportability of Dr. Miller's opinion and its consistency with the other evidence in the record.

As to the substance of the ALJ's findings, Platt takes issue with the ALJ's statement that she took care of her son because Platt "never testified anything that could be considered caring for others aside from cooking for her family."  Pl. Mem. at 9.  But the fact remains that Platt

answered "yes" in her application for benefits to the question that asked: "Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?" R. 219. She then expanded on her answer by responding "my son." Id. Platt also notes that it should not count for much that Platt was able to "live with family," Pl. Mem. at 8. The Court agrees that this does not say much about a person's ability to interact with strangers. But the ALJ in fact accepted Dr. Miller's conclusion that Platt had moderate limitations in this area, see R. 17 (finding a moderate limitation in interacting with others), and incorporated corresponding restrictions into the RFC, see R. 18 (limiting Platt to only occasional and superficial interaction with the general public and coworkers).

      We reach a similar conclusion as to Dr. Miller's opinion that Platt had a moderate limitation in regulating her emotions and controlling her behavior. See R. 352. The ALJ found that this opinion was inconsistent with Platt's adult function report and hearing testimony. R. 21. Specifically, the ALJ noted that Platt could "manage her own money, go to the movies, and groom herself." Id. Platt contests whether she does, in fact, regularly go to movie theaters, Pl. Mem. at 10; questions the importance of her ability to groom herself, id.; and argues that the ability to manage one's money does not demonstrate an ability to regulate emotions and control one's own behavior, id. The Court agrees that some of these facts are less indicative than others of the ability to control behavior. But it is not the case that, as Platt's brief states, the ALJ found that Platt "does not have 'moderate limitations' in regulating her emotions, controlling her behavior, or interacting with others." Pl. Mem. at 10. While the ALJ did say that Dr. Miller's opinion was "inconsistent with the record," R. 21, the ALJ also specifically found that "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation," R. 17;

accord R. 20 ("the record shows only moderate difficulties in interacting with others and adapting or managing herself").

Platt argues that, although the ALJ agreed with Dr. Miller's conclusion that Platt had moderate limitations her ability to adapt and manage herself, the RFC did not include any limitations relating to these "adaptive categories of functioning." See Pl. Reply at 5. Platt contends that moderate limitations in this area are often addressed through an RFC that limits a claimant to "a low stress environment with occasional decision-making." See id. at 6 (collecting cases). Even accepting Platt's argument that a moderate limitation always requires a corresponding RFC limitation, we do not agree that the ALJ failed to include one as to her ability to adapt and manage herself. The RFC limited Platt to "simple routine work" and provided that she would have only occasional and superficial interaction with the general public and her coworkers. R. 18. Limitations in work complexity and in interpersonal interaction are often imposed to address a claimant's limitations in adaptive categories of functioning. See Hill v. Comm'r of Soc. Sec., 2020 WL 836386, at *4-5 (W.D.N.Y. Feb. 20, 2020) (finding that a claimant's marked limitations in his ability to adapt and manage himself were addressed by a limitation to simple and routine tasks, simple work-related decisions, and only occasional interaction with others); Thomas R.W. v. Saul, 2019 WL 5328786, *4 (D. Minn. Oct. 3, 2019) (finding that ALJ's RFC, which restricted claimant to performance of simple, routine, and repetitive tasks, simple work-related decisions, and no more than frequent interactions with supervisors, coworkers, and the general public, "more than account[ed]" for claimant's mental limitations, including "marked limitations in adapting and managing himself"), adopted by 2019 WL 5305494 (D. Minn. Oct. 21, 2019). In short, although Platt suggests that she should have been restricted to a low stress environment, "[i]t is well settled that a limitation to unskilled work

sufficiently accounts for moderate limitations in work-related functioning, including stress." Lewis v. Comm'r of Soc. Sec., 2019 WL 3321896, at *5 (W.D.N.Y. July 24, 2019); accord Reyes v. Colvin, 2016 WL 56267, at *6 (W.D.N.Y. Jan. 5, 2016) (RFC that limited claimant to simple work sufficiently incorporated consultative opinions that claimant be limited to low-stress work).

Moreover, because the ALJ in fact found that Platt had a moderate limitation in this area in a manner similar to Dr. Miller, the ALJ's reasoning as to the basis for that agreement is not significant. Even so, the Court notes that the ALJ relied on objective medical evidence in the record that Platt consistently had "appropriate mood and affect" during five treatment notes across nearly three years. See R. 20. The ALJ also observed that Platt had not been hospitalized, gone to the emergency room, or placed in an assisted living facility as a result of her psychiatric conditions. Id. In any event, aside from a restriction to low-stress work, Platt does not identify restrictions that should have been added to the RFC to account for the moderate limitations Dr. Miller identified. Nor does Platt highlight evidence in the record tending to support greater limitations in the RFC based on Platt's purported limitations in regulating her emotions or controlling her behavior. The primary manifestation of Platt's depression and bipolar disorder considered by the ALJ was Platt's history of infrequent panic attacks. See R. 20. The ALJ found Dr. Miller's opinion to have "some persuasiveness" on this point, in combination with Platt's subjective allegations of panic attacks in her hearing testimony, and incorporated this into her RFC. See R. 18, 22.

The only aspect of Dr. Miller's opinion that was squarely rejected by the ALJ was the opinion that Platt was markedly impaired in her ability to sustain an ordinary routine and maintain regular attendance at work. See R. 21-22, 352. The ALJ found this opinion "not

persuasive, as there is no explanation offered for this limit and it is inconsistent with the overall record concerning the claimant's functioning and the claimant's own statements to this doctor about her activities of daily living." R. 22. Platt correctly notes that the ALJ's discussion of this particular conclusion is not expansive. Pl. Mem. at 12-13; Reply Br. at 2-3. But the ALJ's explanation was significantly more comprehensive than that provided in the cases cited by Platt, where the ALJs provided only a general reference to the record as the basis for their conclusion. See Pl. Mem. at 11-12; Pl. Reply at 3. In Danette Z. v. Commissioner of Social Security, 2020 WL 6700310, at *7 (N.D.N.Y. Nov. 13, 2020), for example, the ALJ failed to explain his conclusion on conflicting medical evidence where he provided only the "vague and conclusory statement" that one opinion was "supported by [that physician's] review of the record." In Prieto v. Commissioner of Social Security, 2021 WL 3475625, at *13 (Aug. 6, 2021), the ALJ provided the similarly generic statement that he accorded weight to one physician's opinion because it was "supported by the medical evidence of record and by her underlying examination."[3] Here, however, it was Dr. Miller who offered a conclusory, unsupported opinion, and the ALJ who identified evidence — "the overall record concerning the claimant's functioning and the claimant's own statements to this doctor about her activities of daily living" — which was inconsistent. See R. 22. Because the ALJ had reviewed and summarized the record as to Platt's

---

[3] We also note that the decisions Platt relies upon involved the failure to comply with the 20 C.F.R. § 404.1520c requirement that an ALJ provide an explanation for his or her conclusion regarding the persuasiveness of a medical opinion. See Prieto, 2021 WL 3475625, at *13 (failure to apply "supportability factor" of 20 C.F.R. § 404.1520c(c)(1)); Cuevas, 2021 WL 363682, at *14 (same). SSA regulations require the application of the 20 C.F.R. § 404.1520c(c) factors at the source level, see 20 C.F.R. § 404.1520c(b)(1), and therefore the ALJ here was required to explore these factors for Dr. Miller's opinion as a whole, not the individual finding that Platt had a marked limitation in sustaining a routine and maintaining regular attendance. In any event, the ALJ did address both the supportability and consistency of this finding. See R. 22 (noting that there was no support offered for the opinion and that it was inconsistent with other evidence in the record).

daily functioning earlier in her opinion, see R. 16, 20-21, we disagree that the ALJ had to repeat this discussion.

Furthermore, the ALJ's conclusion is supported by substantial evidence in the record. Platt reported that she kept track of her own appointments without the need for reminders. R. 72, 220. The state agency medical consultants each concluded that Platt had only mild limitations in the four broad areas of mental functioning and identified no mental limitations that would preclude her from working. See R. 87-88, 98. Dr. Miller himself found that Platt had no limitations in her ability to understand and execute simple instructions, make work-related decisions, and perform tasks at a consistent pace. R. 352-53. Further, Dr. Miller's own report did not explain why there would be a marked limitation in Platt's ability to sustain a routine and regularly attend work. Accordingly, it is unclear what Dr. Miller believed to be the source and nature of this marked impairment. An ALJ does not err in declining to adopt medical opinions that are offered without explanation and which are unsupported by the record, so long as the ALJ provides reasons for doing so. See, e.g., Pollino v. Comm'r of Soc. Sec., 366 F. Supp. 3d 428, 435 (W.D.N.Y. 2019) (affirming ALJ's rejection of medical opinions which were unexplained and unsupported by the record). In light of the deferential standard of review, we cannot say that the ALJ was required to accept Dr. Miller's conclusion that Platt was markedly limited in this area.

IV. CONCLUSION

For the foregoing reasons, Platt's motion for judgment on the pleadings (Docket # 23), is denied, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 25), is granted. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: March 3, 2022
      New York, New York

                                                                          GABRIEL W. GORENSTEIN
                                                                           United States Magistrate Judge